IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| § | |
| Plaintiff, § | |
| § | Civil Action No. 2:19-CR-030-D |
| VS. § | |
| § | |
| TYSON JACKSON, § | |
| § | |
| Defendant. § | |

MEMORANDUM OPINION
AND ORDER

Defendant Tyson Jackson ("Jackson"), charged in a single-count superseding indictment with the offense of convicted felon in possession of firearms and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2),[1] moves to suppress all evidence that the government seized during a search of his residence conducted pursuant to a search warrant. Following an evidentiary hearing, and for the reasons that follow,[2] the court denies the motion.

I

On February 13, 2019 Child Protective Services ("CPS") contacted Texas Peace Officer Aaron Savage ("Investigator Savage"), who is employed as an investigator with the Randall County District Attorney's Office ("RCDAO"), regarding an exigent removal

---

[1]The grand jury handed up the superseding indictment after the hearing on the motion to suppress. This does not affect the outcome or reasoning of the court's ruling.

[2]Pursuant to Fed. R. Crim. P. 12(d), the court sets forth in this memorandum opinion and order its essential findings.

investigation involving Jackson. CPS provided Investigator Savage with a sworn affidavit ("CPS Affidavit") prepared by CPS Investigator Lindzi Burrier ("Investigator Burrier"), in which Investigator Burrier detailed a February 12, 2019 incident during which CPS, along with local law enforcement, had attempted to conduct an emergency removal of a child based on concerns that Jackson, the child's father, had previously gone to the house of Lana Hall ("Hall"), the child's mother, and attempted to gain custody of the child by threatening to shoot Hall and everyone in the house if he did not get his daughter. *See* D. App. Ex. A ("Mr. Jackson told [Hall] this is the last time she is 'playing with him over his daughter. He can just lay them all down right now and walk out with his daughter.'"). According to Investigator Burrier, when police and CPS arrived at Jackson's house to remove the child[3] the following day, Jackson did not allow CPS to enter his residence and denied that he had his daughter.

Investigator Savage testified that he has worked for the RCDAO as a criminal investigator for two years. Prior to working for the RCDAO, Investigator Savage worked with the Canyon Police Department for 12½ years. Investigator Savage has experience as a patrol sergeant, a patrol officer, and a criminal investigator, and has training and experience investigating felons in possession of a firearm. Investigator Savage has an associate's degree in Criminal Justice and holds a Master Peace Officer certification from the Texas Commission on Law Enforcement.

---

[3]Hall ultimately delivered the child to a relative who, in turn, delivered the child to Jackson.

Before Investigator Savage reviewed the CPS Affidavit, he searched Jackson's criminal history and discovered that Jackson had numerous prior arrests and at least one felony conviction. After receiving the CPS Affidavit, Investigator Savage reviewed Jackson's public Facebook profile and viewed an approximately 25-minute long video, posted on February 12, 2019, in which Jackson corroborated some of the information contained in the CPS Affidavit.[4] In the video, Jackson talked about Hall's not letting him have custody of his daughter; he referred to his comment that everybody will go down and everybody will lay down (which Investigator Savage interpreted to mean that people will be shot or killed; he alluded to a confrontation with Hall's brother, stating "if you want your life gone"; and he talked about not allowing CPS and law enforcement to come into his house and accuse him of kidnaping his daughter. Jackson then stated that he "live[s] with [his] pistol" because "that hoe ain't gonna tell on me, that hoe ain't gonna fold on me. Niggas will. I swear to God that pistol got my back and that hoe ain't never jammed on me." P. Ex. E at 23:24-34. Based on Jackson's comment in the video that he lives with his pistol, his pistol always has his back, and his pistol has never failed on him; his other comments about he will lay everyone down; the contents of the CPS Affidavit; and Jackson's criminal history, Investigator Savage believed that the crime of felon in possession of a firearm crime was ongoing.

Investigator Savage then prepared a search warrant affidavit stating his belief that

---

[4]The relevant portions of the Facebook video were played during the July 8, 2019 hearing.

Jackson was in possession of, and was concealing, firearms, firearm ammunition, and firearm component parts (such as magazines). The search warrant affidavit details Investigator Savage's law enforcement background and experience, the contents of the CPS Affidavit, what Investigator Savage observed in Jackson's Facebook video, and Jackson's criminal history (including a prior felony conviction). After consulting with an Assistant District Attorney at the RCDAO, Investigator Savage submitted the search warrant affidavit. A Randall County county court judge acting as magistrate reviewed the search warrant affidavit, found probable cause, and issued the search warrant on February 14, 2019.

Pursuant to the February 14, 2019 search warrant, law enforcement officers working for the Amarillo Police Department and the Department of Homeland Security searched Jackson's residence. During their search, law enforcement officers located and seized three firearms, 222 rounds of ammunition, 2.25 gross grams of cocaine, and 2.38 gross grams of marihuana.

Jackson stands charged with the offense of convicted felon in possession of firearms and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).[5] He moves to suppress on grounds that the warrant lacked probable cause and the good-faith exception does not apply. The government opposes the motion.

---

[5]*See supra* note 1.

II

In reviewing a search pursuant to a warrant, the court engages in a two-step inquiry. *United States v. Newton*, 2010 WL 1460052, at *7 (N.D. Tex. Apr. 13, 2010) (Fitzwater, C.J.) (citing *United States v. Payne*, 341 F.3d 393, 399 (5th Cir. 2003)), *aff'd*, 463 Fed. Appx. 462 (5th Cir. 2012). First, the court determines whether the good-faith exception to the exclusionary rule applies. *Payne*, 341 F.3d at 399 (citing *United States v. Pena-Rodriguez*, 110 F.3d 1120, 1129-30 (5th Cir. 1997)). If it does, the court "need not reach the question of probable cause for the warrant unless it presents a 'novel question of law,' resolution of which is 'necessary to guide future action by law enforcement officers and magistrates.'" *Id*. (citing *Pena-Rodriguez*, 110 F.3d at 1129-30). Second, if the good-faith exception does not apply, the court proceeds to a determination of whether "the magistrate had a substantial basis for . . . concluding that probable cause existed." *Pena-Rodriguez*, 110 F.3d at 1129-30 (quoting *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983)).

"Under the good-faith exception, evidence obtained during the execution of a warrant later determined to be deficient is admissible nonetheless, so long as the executing officers' reliance on the warrant was objectively reasonable and in good faith." *Payne*, 341 F.3d at 399 (citing *United States v. Leon*, 468 U.S. 897, 921-25 (1984)). "The 'good faith inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization.'" *United States v. Pope*, 467 F.3d 912, 916 (5th Cir. 2006) (quoting *Leon*, 468 U.S. at 922 n.23). Normally, the issuance of a warrant by a magistrate suffices to establish an officer's

- 5 -

good faith. *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012). But the good-faith exception does not apply in any one or more of the following four circumstances: (1) the magistrate issuing the warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for reckless disregard of the truth; (2) the issuing magistrate wholly abandoned his judicial role; (3) the warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) the warrant is so facially deficient in failing to particularize the place to be searched or the things to be seized that the executing officers cannot reasonably presume it to be valid. *See Leon*, 468 U.S. at 923; *United States v. Triplett*, 684 F.3d 500, 504 (5th Cir. 2012).

### III

Jackson contends that the good faith exception to the exclusionary rule does not apply in this case because the warrant is based on an affidavit so lacking in probable cause as to render belief in its existence entirely unreasonable and Investigator Savage obtained the warrant and conducted a search based on the inadequate information he himself provided to the magistrate.

### A

The court begins with Jackson's argument that the good-faith exception is not available because the warrant is based on an affidavit so lacking in probable cause as to render belief in its existence entirely unreasonable.

In the Fifth Circuit, the good-faith exception does not apply when a warrant is

obtained with a "bare bones" affidavit—an affidavit that contains "wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause." *United States v. Satterwhite*, 980 F.2d 317, 321 (5th Cir. 1992). An affidavit need not, however, contain direct evidence that supports probable cause; a magistrate can make inferences and draw commonsense conclusions from an affidavit. *See, e.g., United States v. Brown*, 941 F.2d 1300, 1303 (5th Cir. 1991); *United States v. Wylie*, 919 F.2d 969, 975 (5th Cir. 1990). Similarly, an affidavit can establish the required nexus between the evidence sought and the location to be searched through "direct observation" or "normal inferences as to where the articles sought would be located." *See United States v. Perry*, 442 Fed. Appx. 985, 987 (5th Cir. 2011) (per curiam) (citing *United States v. Freeman*, 685 F.2d 942, 949 (5th Cir. 1982)); *United States v. Laury*, 985 F.2d 1293, 1313 (5th Cir. 1993). Because the good-faith inquiry is "whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization," *Pope*, 467 F.3d at 916 (quoting *Leon*, 468 U.S. at 922 n.23), the issue is not whether the affidavit establishes probable cause, but whether the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," *Leon*, 468 U.S. at 923 (citation omitted).

An affidavit is bare bones, for example, if it merely states that the affiant "'has cause to suspect and does believe' or '[has] received reliable information from a credible person and [does] believe' that contraband is located on the premises." *Pope*, 467 F.3d at 920 (alterations in original) (citation omitted). The Fifth Circuit has concluded that an affidavit

was bare bones when it stated only that "Captain Solomon 'received information from a confidential informant' who is 'known to Captain Phil Solomon and has provided information in the past that has led to arrest and convictions.'" *United States v. Barrington*, 806 F.2d 529, 531 (5th Cir. 1986).

B

In his search warrant affidavit, Investigator Savage describes his education, experience, and training, including his experience and training in the drafting of search warrants and the investigations of felon in possession of a firearm and narcotics violations. He then describes the contents of the CPS Affidavit in detail, including Hall's report that Jackson had "threatened to shoot everyone if he did not get his daughter," D. App. Ex. B, and the CPS investigators' attempt to conduct an emergency removal. Investigator Savage then explains the contents of Jackson's public Facebook profile, including the video posted on February 12, 2019 in which Jackson corroborates the events described in the CPS Affidavit and states that he "lives with his pistol because that hoe [alluding to his gun] aint gonna tell on me, that hoe aint gonna fold on me. Niggas will. I swear to god that pistol got my back and that hoe aint never jammed on me." *Id.* Finally, the affidavit details Jackson's criminal history, including his January 15, 2015 felony conviction for attempting to take a weapon from an officer.

Although the affidavit in this case does not contain direct evidence that Jackson illegally possessed a firearm, it provides enough "facts and circumstances from which a magistrate can independently determine probable cause." *Satterwhite*, 980 F.2d at 321. The

affidavit sets out the contents of the notarized CPS Affidavit, including Hall's allegation that Jackson had threatened to "shoot everyone if he did not get his daughter," and that CPS had been unsuccessful in its emergency removal efforts. It explains, in detail, the video Jackson posted on Facebook two days prior, in which he corroborates the events described in the CPS Affidavit (including his comment of laying everyone down and everyone will go down), and describes "liv[ing] with his pistol." And it sets out Jackson's criminal history, including his prior felony conviction. A magistrate could independently determine, based on Investigator Savage's affidavit, that the crime of felon in possession of a firearm was being committed.

Jackson has failed to show that the affidavit on which the search warrant is based is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923 (citation omitted). Accordingly, Jackson is not entitled to avoid the good-faith exception on this ground.

C

Jackson next argues that the good faith exception does not apply "where, as here, an officer obtains a warrant and conducts a search based on the inadequate information he himself provides to a magistrate." D. Br. 3 (citing *Barrington*, 806 F.2d at 532). In *Barrington*, on which Jackson relies, the court explained:

> that an officer may not obtain a warrant based on a bare bones affidavit "and then rely on colleagues who are ignorant of the circumstances under which the warrant was obtained to conduct the search." In the instant case, Captain Solomon obtained the warrant based on his own bare bones affidavit and then conducted the search himself. If one cannot use a bare bones affidavit and then rely on an ignorant colleague to conduct the

> search, he cannot himself conduct the search based on his own bare bones affidavit. Solomon's behavior does not fall within the ambit of the good faith exception of *Leon*, for he had no good faith reason to believe the magistrate had made a probable cause determination.

*Barrington*, 806 F.2d at 532 (citation omitted) (quoting *Leon*, 468 U.S. at 922 n.24). The court has already concluded above that Investigator Savage's search warrant affidavit was not a "bare bones" affidavit, but instead provided sufficient indicia of probable cause. Jackson's reliance on *Barrington* is therefore misplaced.[6]

D

Because the good-faith exception applies and this case does not present any novel legal questions, the court need not reach the question whether the warrant was supported by probable cause. *See, e.g., United States v. Craig*, 861 F.2d 818, 821 (5th Cir. 1988) ("[S]ince we decide that the evidence is admissible under *Leon*, we do not reach, and express no view upon, the issue of whether the warrant was supported by probable cause").

---

[6]During the suppression hearing, Jackson's counsel argued, *inter alia*, that there was no evidence that Jackson had made any "direct threats," or "put anybody [in] imminent fear of bodily injury." Tr. 19. Neither of these, however, is an element of the crime Investigator Savage believed was being committed (i.e., felon in possession of a firearm).

* * *

For the reasons explained, the court denies Jackson's motion to suppress.

**SO ORDERED**.

July 30, 2019.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE