IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| UNITED STATES OF AMERICA, | § | |
|---|---|---|
| Plaintiff, | § | |
| v. | § | 2:19-CR-030-Z-(01) |
| TYSON JAMAL JACKSON, | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Defendant Tyson Jamal Jackson ("Jackson") moves to suppress all evidence that the government seized during a search of his residence. Even though a search warrant was issued and executed, Jackson posits that a non-consensual warrantless search occurred at his residence prior to the issuance of the search warrant. Following an evidentiary hearing, and for the reasons that follow,[1] the Court **DENIES** the motion.

**Background Facts**

On the morning of February 14, 2019, law enforcement officers from the Amarillo Police Department and the Department of Homeland Security conducted surveillance on Jackson's residence[2] as they waited for a search warrant to be issued.[3] At approximately 7:30 a.m., Task Force Officer ("TFO") Jacob Roybal and TFO Thomas Newton observed Jackson and his girlfriend, Jennifer Drone, enter a parked vehicle and drive to the Potter County Courthouse. TFO Roybal and TFO Newton followed the vehicle and continued surveillance on Jackson. Homeland

---

[1] Pursuant to FED. R. CRIM. P. 12(d), the Court sets forth in this memorandum opinion and order its essential findings.
[2] Located at 8410 Barstow Avenue, Amarillo, Texas (the "Residence").
[3] For further factual background, see *United States v. Jackson*, CV 2:19-CR-030-D, 2019 WL 3429105 at *1–2 (N.D. Tex. July 30, 2019).

Security Investigations ("HIS") Special Agent ("SA") Jacob Simmons was called to replace TFO Roybal and TFO Newton. Shortly after Jackson left, SA Simmons began continuous surveillance on the residence. After some time, SA Simmons observed an elderly white male (later identified as Danny Conley) briefly exit the Residence with his small white dog before Conley returned inside.

Meanwhile, TFO Roybal and TFO Newton observed Jackson and his girlfriend enter the courthouse, leave the courthouse, drive to a bail bonds company, and then later return to the courthouse. As Jackson and his girlfriend returned to the courthouse, Randall County District Attorney's Office Investigator Aaron Savage called and notified TFO Roybal and TFO Newton that an acting magistrate from the County Court of Randall County had issued and signed the search warrant at 9:25 a.m. that morning — February 14, 2019.

Amarillo Police Department Special Weapons and Tactics ("ADP SWAT") team were standing by, ready to assist in surveillance and execution of the search warrant at the residence. Corporal Toby Hudson — assigned to the ADP SWAT team — was gathering equipment and personnel outside the residence. As instructed by TFO Newton, Investigator Savage hand-delivered a copy of the search warrant to SA Simmons who was maintaining surveillance on the residence.

As ADP SWAT prepared for a protective sweep of the residence, TFO Roybal instructed APD officers in a marked police cruiser to initiate a traffic stop on the vehicle because Jackson's girlfriend was seen driving with a suspended driver's license. According to the police cruiser's in-car video, APD Officer George Lavery initiated the traffic stop at 9:47 a.m.

Back at the residence, Corporal Hudson learned over the radio that the warrant had issued and that the traffic stop was being conducted on Jackson's vehicle. Following these two events,

SA Simmons and Corporal Hudson separately observed Conley exit the residence. This is the first time Corporal Hudson saw Conley, as Conley walked out to the sidewalk and began walking north with his dog. A few minutes later, as a uniformed officer made contact with Mr. Conley, Corporal Hudson and ADP SWAT approached the residence.

After knocking and announcing their presence yet receiving no response from inside, ADP SWAT members entered the Residence and performed a protective sweep to ensure the Residence was clear of any persons. As soon as TFO Newton arrived at the residence, SA Simmons handed him a copy of the search warrant. After ADP SWAT completed the protective sweep and cleared the residence, law enforcement officers entered. During the search, law enforcement located and seized three firearms, 222 rounds of ammunition, 2.25 gross grams of cocaine, and 2.38 gross grams of marijuana.

Back at the scene of the traffic stop, ADP officers arrested Jackson for being a felon in possession of firearms and ammunition, in violation of Title 18 United States Code, Sections 922(g)(1) and 924(a)(2). Jackson now moves to suppress all evidence seized from the February 14, 2019 search of the Residence.

## Procedural History

This is Jackson's second motion to suppress evidence. Jackson filed his first motion to suppress arguing all evidence should be suppressed on grounds that the search warrant lacked probable cause and the good-faith exception does not apply. On July 30, 2019, after an evidentiary hearing, the Honorable United States Senior District Judge Sidney A. Fitzwater denied Jackson's first motion to suppress—finding the good-faith exception did apply. Next, the grand jury returned a superseding indictment, charging Jackson with a single count of the offense of convicted felon in possession of firearms and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

On August 1, 2019, this case was transferred to the undersigned. Alleging a non-consensual warrantless search occurred before a search warrant was issued, Jackson filed this second motion to suppress. Subsequently, the Court held an evidentiary hearing and examined three witnesses.

**Legal Analysis**

The text of the Fourth Amendment to the Constitution of the United States protects "persons, houses, papers, and effects, against unreasonable searches and seizures. . . ." U.S. CONST. AMEND. IV. "Warrantless searches are presumptively unreasonable." *United States v. Villarreal*, 963 F.2d 770, 773 (5th Cir. 1992). "[E]vidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure." *United States v. Calandra*, 414 U.S. 338, 347 (1974) (citations omitted).

The "exclusionary rule" prohibits such use "not because the evidence is not probative, or to chastise errant law officers or to benefit the accused, but to compel respect for the guaranty of the Fourth Amendment 'in the only effectively available way — by removing the incentive to disregard it.'" *United States v. Ragsdale*, 470 F.2d 24, 30 (5th Cir. 1972) (quoting *Elkins v. United States*, 364 U.S. 206, 217 (1960)). Thus, "where suppression fails to yield 'appreciable deterrence,' exclusion is 'clearly . . . unwarranted.'" *Davis v. United States*, 564 U.S. 229, 237 (2011) (alteration in original) (quoting *United States v. Janis*, 428 U.S. 433, 454 (1976)).

As a general rule, the proponent of a motion to suppress evidence bears the initial burden of establishing, by a preponderance of the evidence, "that his own Fourth Amendment rights were violated by the challenged search or seizure." *United States v. Iraheta*, 764 F.3d 455, 460 (5th Cir. 2014) (citing *Rakas v. Illinois*, 439 U.S. 128, 130 (1978) (citations omitted)). After providing some evidence establishing a warrantless search of the defendant's residence, the burden shifts to the government to prove that its actions were constitutional. *Iraheta,* 764 F.3d at 460 (citing *United*

*States v. Kelley*, 981 F.2d 1464, 1467 (5th Cir. 1993) (internal marks omitted).

I.

The single issue before the Court is whether law enforcement entered Jackson's Residence prior to at 9:25 a.m. — the time the search warrant had issued.

A.

Jackson asserts that a warrantless search of the Residence occurred prior to the warrant being issued at 9:25 a.m. According to Corporal Toby D. Hudson's incident report, ADP SWAT officers observed an elderly man (Conley) exit the Residence to walk a dog. Officers approached Conley and had a conversation with him. Next Corporal Hudson and other ADP SWAT officers entered the unlocked residence, conducted a search, and exited the residence. Jackson contends that at a later time — after the search warrant was issued — ADP SWAT entered the Residence for a second time to execute the search warrant. Corporal Hudson's report is silent as to whether a search warrant was issued when he and other ADP SWAT Officers first entered the residence. Accordingly, the burden shifts to the government to show either (1) a warrantless search did not occur, or (2) an exception to the exclusionary rule applies.

B.

The United States maintains that no government actors or law enforcement officers entered Jackson's Residence prior to the issuance of the search warrant. At the evidentiary hearing, Corporal Toby D. Hudson, TFO Jacob Roybal, and SA Jacob Simmons testified as to the events surrounding the search at the residence. When reading Corporal Hudson's incident report in isolation, the Court cannot determine whether the search warrant was issued by the time he and other ADP SWAT entered the residence. However, because the Court must weigh all the evidence and look at the totality of the circumstances, the issue before the Court is resolved rather easily —

with the help of an elderly male and his little white dog.

The United States admitted into evidence two items: (1) the in-car video showing the time of the traffic stop occurring at 9:47 a.m., and (2) the search warrant issued at 9:25 a.m. Thus, the government must show, by a preponderance of the evidence, that no law enforcement entered the residence prior to 9:25 a.m. Even though the exact time law enforcement entered the Residence is unknown, the Court can determine that law enforcement's first entry into the Residence happened both after the search warrant had issued at 9:25 a.m. and after the traffic stop at 9:47 a.m.

Corporal Hudson stated in his report, and testified at the hearing, that while he and other ADP SWAT officers went to the residence, he was made aware of the traffic stop on Jackson's vehicle. According to APD Officer Lavery's in-car video, he initiated the traffic stop at approximately 9:47 a.m., which was approximately twenty-two minutes after the search warrant was signed. Corporal Hudson clarified from his report that when he and ADP SWAT entered the Residence for the first time, it was only after he had learned of the search warrant being signed and the traffic stop had been initiated. Corporal Hudson's testimony confirmed that the search warrant had issued before he or any other ADP SWAT officers entered the residence. The testimony further confirmed that neither Corporal Hudson nor any other ADP SWAT officers entered the Residence prior to knowing the search warrant had issued.

Shortly after Jackson and his girlfriend departed the residence, SA Simmons testified that he arrived and conducted surveillance continuously until a firearm was found and Jackson was arrested. According to SA Simmons, the only person to enter or exit the Residence prior to 9:25 a.m. was the elderly white male — Danny Conley and his little white dog. SA Simmons notified TFO Roybal and TFO Newton of Conley's first exit from the Residence before the search warrant was signed. However, the second time Conley exited the Residence was after Investigator Savage

hand-delivered the search warrant to SA Simmons — necessarily after 9:25 a.m. Although SA Simmons observed Conley exit the Residence twice, Corporal Hudson only was at the Residence long enough to see Conley exit it once.

Furthermore, other than the ambiguity in Corporal Hudson's report, the testimony of each of the three witnesses is corroborated — showing that no law enforcement, or any other governmental actors, entered the Residence prior to the search warrant being issued at 9:25 a.m., prior to SA Simmons receiving the search warrant in hand at the residence, or prior to Conley and his little white dog exiting the Residence for the second time.

Based on the totality of the circumstances and all the evidence presented to the Court, the Court finds by a preponderance of the evidence that all searches and seizures by the government at the Residence located at 8410 Barstow Avenue, in Amarillo, Texas, on February 14, 2019, occurred *after* the search warrant was issued by a Randall County, County Court Judge acting as Magistrate. Jackson fails to show that a warrantless search occurred or that his Fourth Amendment rights were violated when law enforcement entered his Residence pursuant to a search warrant.

C.

The government argues, in the alternative, that even if ADP SWAT had entered the house prior to the search warrant being issued, the inevitable discovery exception applies.[4] "[F]or the inevitable-discovery exception to apply the government must, by a preponderance of the evidence, establish (1) a reasonable probability that the contested evidence would have been discovered by lawful means in the absence of the police misconduct and (2) that the government was actively pursuing a 'substantial alternate line of investigation at the time of the constitutional violation.'" *United States v. Lamas*, 930 F.2d 1099, 1102 (5th Cir. 1991) (quoting *United States v. Cherry*, 759

---

[4] Jackson also argued, and the government agreed, that the exigent circumstances exception does not apply in this instance. Accordingly, the Court need not address that issue further.

F.2d 1196, 1205–06 (5th Cir. 1985), *cert. denied,* 479 U.S. 1056 (1987)).

It is undisputed that law enforcement pursued and obtained a search warrant on February 14, 2019, to search Jackson's residence. Law enforcement's entry into the Residence did not supply or derive any the information or facts included in the search warrant affidavit. At the time of entry, there was a reasonable probability that the contested evidence would have been discovered by lawful means in the absence of the alleged police misconduct. After APD SWAT officers entered the Residence "for the limited purpose of securing it and its occupants until a warrant could be obtained," other law enforcement officers immediately entered the Residence and seized the contested evidence pursuant to a valid search warrant. *Lamas*, 930 F.2d at 1102 (5th Cir. 1991). Therefore, even if APD SWAT officers entered the Residence prior to the search warrant being signed the Court, finds that the inevitable discovery exception would apply.

Accordingly, for the reasons explained, the Court DENIES Defendant Tyson Jamal Jackson's second motion to suppress (ECF No. 70).

**SO ORDERED.**

January 24, 2020.

_____
MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE